Ulysses J. HUDSON, Plaintiff,

v.

Michael CHERTOFF, as Secretary of the United States Department of Homeland Security, Defendant.

No. 05 60985CV.

United States District Court,
S.D. Florida.

Feb. 12, 2007.

Brian L. Lerner, Maria Eugenia Ramirez, Jason Kellogg and Mark R. Cheskin of Hogan & Hartson LLP, Miami, FL, for Plaintiff, Ulysses J. Hudson.

Laura W. Bonn and Ann M. St. Peter–Griffith of the U.S. Attorney's Office, Miami, FL, for Defendant, Michael Chertoff.

### ORDER

O'SULLIVAN, United States Magistrate Judge.

THIS MATTER comes before the Court on the Defendant's Motion for Remittitur or, in the Alternative at Plaintiff's Election, New Trial on Compensatory Damages (DE# 210–1, 11/21/06). Having presided at trial and having reviewed the applicable filings and law and having heard argument from counsel, for the reasons stated more fully below, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Remittitur or, in the Alternative at Plaintiff's Election, New Trial on Compensatory Damages (DE# 210–1, 11/21/06) is GRANTED in part and DENIED in part.

### INTRODUCTION

A jury returned a verdict in favor of the plaintiff's claims against the government for discrimination under the Rehabilitation Act of 1973, 29 U.S.C. 701, *et seq.*, and for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000, *et seq.* In the verdict, the jury determined that the Plaintiff should be awarded damages in the amount of $1.5 million to compensate him for emotional pain and mental anguish.

### FACTUAL BACKGROUND

The plaintiff was employed by the United States Customs Service and the Department of Homeland Security, Immigration and Customs Enforcement as an Intelligence Research Specialist from 1995 through February 26, 2005. In October, 2001, the government transferred the plaintiff from their Miami office to the Office of Resident–In–Charge ("RAC") in Ft. Lauderdale. The transfer arose from a prior accommodation request, which was litigated in *Hudson v. Ridge*, Case No. 01–2425–Civ–Marra ("Hudson I").

On or about October 21, 2002, the defendant reassigned the plaintiff from Ft. Lauderdale to the Cyber Crimes Group in Miami while the defendant investigated the plaintiff's August 2002 allegations of stalking and harassment against his supervisor. From the date of his reassignment to Miami, October 21, 2002, to the date of his termination, February 26, 2005, the plaintiff never reported to work in Miami. On February 26, 2005, the defendant terminated the plaintiff for his purported failure to maintain a regular work schedule and for unauthorized absence from the workplace.

At trial, the plaintiff testified as to the emotional pain and mental anguish that he experienced as a result of the alleged violations of Title VII and the Rehabilitation Act. Additionally, he presented medical testimony through Dr. Lanes and Dr. George Wallace–Barnhill to further support his claims for compensatory damages. The plaintiff testified that as a result of his

supervisor's remarks about getting nails in his tires that he was unable to return to work for five days due to a relapse in his depression. (Hudson Trial Tr. 160: 3–5). He also testified to the anxiety and distress he experienced when his supervisor informed him that his leave in June 2002 was considered absence without leave. (Hudson Trial Tr. 170: 13–171:6). The plaintiff testified that his supervisor's close surveillance of him made him sick. (Hudson Trial Tr. 164:12–18; 175:15–176:6; 181:3–7). Upon being advised of his transfer back to Miami Cyber Crimes in October 2002, the plaintiff testified that he felt destroyed and nauseous. He testified that he experienced intense anxiety and uncontrollable crying. (Hudson Trial Tr. 187:18–188:5; 188:20–189:16). He experienced an even deeper depression when he learned of his potential termination in June 2003. (Hudson Trial Tr. 212:23–213:10). His ultimate termination in February 2005 destroyed him. His requests for accommodation had gone through all of the official channels and had been denied. (Hudson Trial Tr. 240:14–241:17). Drs. Lanes and Wallace–Barnhill corroborated the plaintiff's testimony of his emotional state during the relevant time period of his claims. The plaintiff was unable to enjoy life's everyday pleasures and was socially isolated. His relationships with his wife and daughter were strained. The plaintiff had difficulty sleeping despite receiving heavy medications. (Lanes Trial Tr. 42:7–17; 25:10–19). The plaintiff testified that he suffered financial harm in addition to the emotional harm. He filed Chapter 13 bankruptcy as a result of his inability to

work. To get out of bankruptcy, he had to sell his second home, which he considered as his daughter's college fund. His home was in foreclosure twice. His teeth deteriorated because he could not afford to pay a dentist. (Hudson Trial Tr. 244:22–248:6)

After the jury returned a verdict in the plaintiff's favor, the defendant filed the present motion. In its verdict, the jury awarded $1.5 million to compensate the plaintiff for his emotional pain and mental anguish. The defendant asserts that the plaintiff's compensatory damages must be reduced to the mandatory statutory cap of $300,000 pursuant to 42 U.S.C. § 1981a. The defendant seeks to further reduce the amount of compensatory damages based on the plaintiff's preexisting disability and that other stressors in the plaintiff's life including, but not limited to, his employment with the defendant before May 2002 as well as the present litigation, contributed to his condition and are not compensable.[1] Alternatively, the defendant requests that the plaintiff be required to accept whatever reduction this Court determines to be appropriate or to elect a new trial solely on damages. The plaintiff concedes that 42 U.S.C. § 1981a imposes a cap on his damages. However, the plaintiff argues that he is entitled to $300,000 per claim, for a maximum total amount of $600,000.

## ANALYSIS

### I. Section 1981a Compensatory Damage Award Cap.

 Section 1981a of Title 42 of the United States Code imposes a $300,000 cap

---

[1]. In pretrial motions and hearings, the Court limited evidence at trial to the relevant period of May 2002 through February 2005. In June 2002, while working in the Ft. Lauderdale office, the plaintiff was unable to return to work for five days due to a relapse in his depression that resulted from his supervisor's remark regarding "nails in his tires." That

same summer, the plaintiff experienced anxiety and depression when he learned that his leave in June was considered absence without leave. A reasonable jury certainly could find that such emotional pain and mental anguish was attributed to the conduct of the defendant during the relevant period of this action.

for compensatory damage awards under Title VII. The parties agree that 42 U.S.C. § 1981a applies to the plaintiff in the present case and requires reduction of the jury award for compensatory damages. The parties disagree as to the amount of the reduction. The defendant argues that the plaintiff's compensatory damage award must not exceed $300,000. The defendant argues that the plaintiff's compensatory damage award should be reduced to $600,000 (i.e. $300,000 per claim).

The circuit courts that have addressed the issue consistently have held that the statutory cap applies per party or action, not per claim. *See Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142 (7th Cir.1999); *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232 (10th Cir. 1999), *overruled on other grounds National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Hudson v. Reno*, 130 F.3d 1193 (6th Cir.1997), *cert. denied*, 525 U.S. 822, 119 S.Ct. 64, 142 L.Ed.2d 50 (1998), *abrogated on other grounds, Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 845, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001) (reversing *Hudson's* inclusion of front pay as compensatory damages subject to the statutory cap); *see also Alexander v. Fulton County*, 207 F.3d 1303, 1322 n. 13 (11th Cir.2000) (acknowledging the $300,000 statutory cap for each complaining party where the plaintiffs had various Title VII claims). Although the Eleventh Circuit has not squarely addressed the issue, it affirmed without opinion [2] a district court in Georgia that determined the statutory cap applies to each action, not each claim. *See Rau v. Apple–Rio Management, Co.*, 85 F.Supp.2d 1344 (N.D.Ga.1999), *aff'd*, 251 F.3d 161 (11th Cir.2001).

The Court is persuaded by the analysis of the *Rau* decision as well as the decisions of the Sixth, Seventh, and Tenth Circuits that the statutory cap applies to each action rather than each claim. The *Rau* court cited *Smith, Baty*, and *Hudson*, among others, as support for its construction. The courts that have addressed the issue rely on fundamental principles of statutory construction. One such principle is that the language of the statute itself is the starting point for interpreting the statute. "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *See, Rau*, 85 F.Supp.2d at 1347 (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)).

Section 1981a provides in pertinent part:
(a)(1) In an action brought by a *complaining party* under [Title VII] ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section ...
(b)(3) The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses ... shall not exceed, *for each complaining party—* ... (D) in the case of a respondent

---

**2.** In *Rau,* the plaintiff filed claims for violation of the Retaliation Act, among others. The jury awarded $34,000 for back pay, $92,000 for compensatory damages, and $1.5 million for punitive damages. The district court reduced the compensatory and punitive damages to $300,000 pursuant to the cap found in 42 U.S.C. § 1981a. The defendant filed a motion for new trial or in the alternative a motion for reduction of the jury award. The district court denied both. On appeal, the defendant did not expressly challenge the statutory cap. Instead, it sought reversal of the denial of its motions for new trial or remittitur. The Eleventh Circuit affirmed without opinion the district court's denial of both motions.

who has more than 500 employees ... $300,000 ....

(d) As used in this section: (1) The term "complaining party" means—(A) ... a person who may bring an *action* or proceeding under title VII of the Civil Rights Act of 1964 (42 U.S.C § 2000e et seq.) ....

42 U.S.C § 1981a (emphasis added). As the *Rau* court concluded, "[t]he reference to 'each complaining party' in § 1981a(b)(3), in combination with the definition of 'complaining party' found in § 1981a(d) and the reference to 'action' in § 1981a(a)(1), compels a finding that the caps apply to each action, not each claim." *Id.*

■ In *Hudson*, the Sixth Circuit explained that

> Under the plain language of the statute, the cap on compensatory damages applies to each complaining party in an "action." An "action" is simply a "lawsuit brought in court." Similarly, the Federal Rules of Civil Procedure use the term "action" or "civil action" to describe all claims for relief alleged in a single lawsuit. Put simply, the § 1981a caps apply to each party in an action, not to each claim, and there is nothing in the language of the statute to indicate otherwise.

*Hudson*, 130 F.3d at 1200 (citations omitted); *see Smith*, 165 F.3d at 1149–51 (following *Hudson*); *see also Baty*, 172 F.3d at 1246. The plaintiff's argument that he should be entitled to $300,000 per claim because his claims of retaliation and violation of his disability rights are analogous to a plaintiff who files a federal claim and a state claim lacks merit. The present action does not involve any state claim. Section 42 U.S.C. § 1981a is the operative statute for both of the plaintiff's federal claims. Although the plaintiff has two federal claims, both are subject to the statutory cap as he is the sole "complaining par-

ty" in this action. The Court finds the statutory cap applies and that the total amount of compensatory damages the plaintiff is awarded is $300,000. Accordingly, the jury award of $1.5 million compensatory damages must be reduced to $300,000.

## II. *Further Reduction of the Compensatory Damages Is Not Warranted.*

■ The defendant argues that the compensatory damages award should be less than $300,000 because the plaintiff did not suffer that amount in mental anguish damages based on the evidence presented at trial. The defendant asserts that remittitur is warranted because of the plaintiff's preexisting condition. The Eleventh Circuit has held that a Court must "grant a new trial or remittitur when the award exceeds the maximum limit of a reasonable range within which the jury may properly operate." *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1380 (11th Cir.1982). The defendant further argues that remittitur is proper because the jury's award "exceeds the amount established by the evidence." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985); *see Moses v. K–Mart Corp.*, 905 F.Supp. 1054, 1057 (S.D.Fla.1995), *aff'd*, 119 F.3d 10 (1997).

The plaintiff argues that there is substantial and extensive evidence to support the jury's compensatory damages award. The plaintiff further argues that the Eleventh Circuit follows the "fundamental principle ... that the fact-finder determines the quantum of damages in civil cases." *Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir.1976). A deferential standard of review applies to jury awards of compensatory damages because " 'the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.' " *Ferrill v. Parker Group, Inc.*, 168 F.3d 468,

476 (11th Cir.1999) (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937–38 (5th Cir.1996)). Additionally, the plaintiff asserts that compensatory damages do not need to be proved with a high degree of specificity and may be inferred from circumstances. Medical evidence or expert testimony is not required to prove emotional damages. *See Ash v. Tyson Foods, Inc.*, 129 Fed.Appx. 529, 2005 WL 902044, *6 (11th Cir.2005).

■ The plaintiff testified to the humiliation, the loss of dignity, the intangible psychological injuries and the financial harm the defendant's conduct caused him. He presented medical testimony through Dr. Lanes and Dr. Barnhill. The jury heard testimony of how the plaintiff felt destroyed by his reassignment back to Miami. For more than two years, the plaintiff was unable to return to work after the reassignment. The plaintiff's absence from work resulted in his termination. The plaintiff testified that he suffered anxiety, depression, despair, sleeplessness, and a lack of caring or capacity to care for others. Dr. Lanes and Dr. Barnhill corroborated the plaintiff's testimony and testified that he suffered from depression, anxiety, and symptoms of post-traumatic stress syndrome because of the defendant's treatment of the plaintiff. The jury found the defendant was liable for the plaintiff's Title VII claim as well as his Rehabilitation Act claim.

In the present action, the jury awarded $1.5 million to compensate the plaintiff for his emotional pain and mental anguish resulting from the defendant's failure to accommodate him and for the defendant's retaliation against him for exercising his legal rights. As a result of the statutory cap imposed by 42 U.S.C. § 1981a, the plaintiff's compensatory damages have been reduced by $1.2 million to the amount of $300,000.

The cases upon which the defendant relies to support it position that $150,000 should be the benchmark figure for compensatory damages for mental anguish are not dispositive. The Eleventh Circuit Court decision was decided more than ten years ago and the district court decision was decided more than six years ago. *See Walters v. City of Atlanta*, 803 F.2d 1135, 1146 n. 8 (11th Cir.1986); *Copley v. BAX Global, Inc.*, 97 F.Supp.2d 1164, 1172 (S.D.Fla.2000). In *Walters*, the Eleventh Circuit reviewed the jury award in the amount of $150,000 for mental anguish for plain error where the sufficiency of the evidence was not challenged in the motion for directed verdict. The Eleventh Circuit affirmed the amount and concluded that the award was not manifestly unjust. *Id.* at 1146. In *Copley*, the district court remitted the jury award of compensatory damages from $479,692 to $100,000 because it found the amount "beyond the realm of reasonableness." *Id.* at 1172. *Copley* is factually distinguishable. In that case, the lost wages amounted to approximately $20,000 and the plaintiff secured a higher paying job within two months of his termination.

The plaintiff cites *Bogle v. McClure*, 332 F.3d 1347 (11th Cir.2003), to support its position that courts have awarded compensatory damages that well-exceed the benchmark figure of $150,000 as claimed by the defendant. In *Bogle*, the jury awarded each librarian $1 million for emotional harm. The Eleventh Circuit affirmed the district court's reduction to $500,000 per librarian for compensatory damages.

Given the statutory cap that reduced the $1.5 million compensatory damages award to $300,000, the deferential standard that applies to an award of compensatory damages by the jury, and that sufficient evidence exists, this Court finds that the

plaintiff is entitled to an award of $300,000 for compensatory damages for the emotional pain and mental anguish that he suffered as a result of the defendant's violations of Title VII and the Rehabilitation Act.